Hibbard, P. J.
A consolidated report is presented to us covering these four actions. They are of tort in which the plaintiffs claim negligence on the part of the defendant in selling certain corn cakes alleged to be unfit for human consumption. The answer in each case was a general denial and a claim of contributory negligence. Joseph Gaulin brought his action for consequential damages, Theda, David and Robert Gaulin for personal injuries. By agree *507 ment of counsel the declarations were amended to substitute the Washington Beverage Co. Inc. for Simon Kaletski, the original defendant. The actions have been treated by the parties as based upon negligence.
The plaintiffs are members of one family, Joseph the father, Theda the mother and the others minor children.
The evidence for the plaintiffs tended to show that Theda about 9:30 P. M. on August 19, 1939, accompanied by her husband went to the store of the defendant. There the husband remained outside, she entered and asked for popcorn in bags. She was told that the defendant had none. She then asked for potato chips in bags and was told that the defendant had none. She then asked for fresh corn cakes. The manager of the store told her that they had some which had just come in that day. The plaintiff Theda purchased six together with some candy. The corn cakes were not wrapped but were taken from boxes in the candy case and put in a paper bag. The cakes were in double form, that is to say there were two cakes of equal size joined together but which could be separated along a defined line. The plaintiff Theda was in front of the candy case at the time of the purchase. She went immediately home and left the bag with the corn cakes and candy on her kitchen table. The kitchen was then lighted. She herself took one of the single cakes and then went for a walk with her husband. While walking she ate all of her corn cake. Before leaving the house, she instructed her sister to give some of the corn cakes to her two children. They were each given one single corn cake. Theda thought that the corn cake which she was eating tasted stale but paid no attention to it and finished its eating but upon reaching home one-half hour later felt ill, nauseated and some time later she vomited. Upon her return she found her children were ill and also were vomiting. This continued during the night and the following *508 morning. The remaining corn cakes which were on the kitchen table were broken and examined and small worms were found therein. A doctor was called the following morning to treat Theda and the two children. The corn cakes were brown in color but there was nothing unusual about their appearance. Theda did not notice any worms or anything unusual about the appearance of the corn cakes. They looked “alright”. The woman left in charge of the children took one cake, did not notice anything unusual about its appearance, took a bite of it, thought it tasted funny and spat it out. She then examined a corn cake and noticed a worm but did not become ill. The corn cakes given to the children were only partially eaten; the unconsumed portions were examined and found to contain worms. The doctor called to attend Theda and the children testified that he received a history of having eaten stale and wormy pop corn cakes on the previous evening and that thereafter all of the plaintiffs had become ill, sick to their stomachs and vomited. He diagnosed the condition as one of food poisoning and that from the history received from the parties and in the absence of any other testimony of impure food it was his opinion the stale and wormy corn cakes had caused the illness.
There was introduced a notice given to the defendant on behalf of the plaintiffs by their attorney under date of August 21st. No question is raised as to the sufficiency of this notice.
The evidence for the defendant tended to show that the defendant was a corporation and owner of the store in question at the time the purchase of the corn cakes was made. It is a retail store and sells groceries and meat in addition to confectionery and candy. The defendant had on hand at the time the plaintiff Theda came into the store a sup *509 ply of potato chips and pop corn in bags; the plaintiff Theda however pointed to the pop corn cakes which she purchased and requested the manager of the store to sell them to her. The corn cakes were in the candy case in full view and were seen by the plaintiff Theda who was standing in front of the case at the time of the purchase. There was one layer of corn cakes remaining in the same box from which the cakes were sold. The defendant had received no complaints with reference to prior sales from the same box.
The defendant seasonably filed requests for rulings in the case of Theda. Those numbered 1, 2, 3, 4, 5, 7, 8, 9 and 11 were refused. They were as follows:
“1. Upon all the evidence a finding for the plaintiff is not warranted for the reasons that (a) There is insufficient evidence to warrant a finding that the popcorn consumed by the plaintiff caused the sickness and illness of which the plaintiff complains, (b) There is insufficient evidence to warrant a finding that the plaintiff gave to the defendant sufficient and proper notice of the alleged breach of warranty. (c) If the court finds that the popcorn was unwholesome or corrupt there is insufficient evidence to warrant a finding that the defendant had knowledge that the popcorn purchased by the defendant was unwholesome or corrupt. 2. There is insufficient evidence to warrant a finding that the defendant was negligent. 3. If the court finds that the defendant was negligent there is insufficient evidence to warrant a finding that the defendant’s negligence was the proximate cause of the plaintiff’s illness. 4. There is insufficient evidence to warrant a finding that the plaintiff gave to the seller of the popcorn proper and sufficient notice of the alleged breach of warranty. 5. As a matter of law notice of the breach of warranty given to “Nation Wide Store” is but notice of said breach of war *510 ranty to ‘ ‘Washington Beverage Company. ’ ’ 7. The plaintiff has the burden of proving by a preponderance of the evidence that the defendant through its agents or servants had actual knowledge that the popcorn purchased by the plaintiff was not fit for human consumption. 8. There is not sufficient evidence to warrant a finding that the plaintiff relied upon the skill and judgment of the defendant its agents or servants in selecting the popcorn purchased by the plaintiff. 9. Upon all the evidence there should be a finding for the defendant. 11. There is sufficient evidence to warrant a finding that the popcorn delivered to the plaintiff was at the time of the delivery reasonably fit for the purpose for which it was purchased.”
The sixth and tenth which were as follows were not passed upon by the court:
“6. There is insufficient evidence to warrant a finding that there was a breach of warranty on the part of the defendant. ... 10. If the court finds that there was a breach of warranty on the part of the defendant proof of the breach of warranty is not sufficient to establish negligence on the part of the defendant.”
In the cases of David and Robert the defendant seasonably filed similar requests for rulings of which the third and fourth were refused. They were as follows:
“3. There is insufficient evidence to warrant a finding that the defendant was negligent. 4. Upon all the evidence there should be a finding for the defendant.”
The defendant also filed requests in the case of Joseph, two in number, both of which were refused and were of the following tenor:
“1. There is insufficient evidence to warrant a finding that the defendant was negligent. 2. Upon all the evidence a finding is required for the defendant because a. There is *511 insufficient evidence to warrant a finding that the defendant was negligent.”
The trial judge filed a finding, the material part of which is as follows:
“FINDINGS AND RULINGS.
This is an action of tort in which the plaintiff claims negligence on the part of the defendant in selling certain corn cakes to the plaintiff, which corn cakes were claimed to be tainted and unfit for consumption by reason of which the plaintiff became ill.
The declaration alleging also that due notice was given to the defendant.
The answer of the defendant was a general denial and claim of contributory negligence.
By agreement of counsel, an amendment was made to substitute another defendant, making the Washington Beverage Company Inc. the defendant in the case.
The testimony of the plaintiff was in substance that on August 19,1939, the plaintiff went into the store of the defendant and asked for pop- corn in bags and was told the defendant had none and the plaintiff then asked for potato chips in bags and found that the defendant had none; that the manager of the store, one Minnie R. Kaletski, told the plaintiff that they had some fresh corn cakes that had just come in and suggested that the plaintiff buy some of these. The plaintiff testified that she purchased six (6) corn cakes and some candy; that the plaintiff then went home and left the bag with the corn cakes and candy on the kitchen table after first having taken out a corn cake for herself; that the plaintiff and her husband went out for a walk and while walking along the plaintiff ate her corn cake; that before she left the house she instructed her sister to give some of the corn cakes to her two minor children. The plaintiff *512 further testified that she thought as she was eating the com cake that it tasted stale but paid no particular attention to it but finished eating the com cake; that upon reaching home again after having walked with her husband the plaintiff felt ill and nauseated and later vomited; that she found that her children were ill and that they were vomiting whereupon the plaintiff examined the balance of the corn cakes which were on the kitchen table and found that they were not fresh but there were small worms in the remaining corn cakes. The plaintiff testified that a doctor was called in the following morning and treated her and the two minor children.
Lucille Pelkey, a sister of the plaintiff, testified that she was in the house when the plaintiff returned home from the store with the corn cakes; that she had instructions from the plaintiff to give the children some of the corn cakes; that she prepared the children for bed and gave them some corn cakes; that shortly after the plaintiff returned to the house the children were ill and vomiting and she also testified to seeing worms in the corn cakes.
There was testimony by the plaintiff and also agreed to by the defendant that the sign over the door of the defendant’s store was ‘NATION WIDE STORES.’ The plaintiff offered in evidence a copy of a notice which notice was delivered at the store of the defendant, a copy of which notice is as follows:
August 21, 1939.
Nation Wide ¡Stores ■
57 Lamartine Street Worcester, Massachusetts.
Gentlemen:
This office appears for Theda, David and Robert Gaulin for personal injuries sustained as a result of eating putrid *513 and wormy popcorn and candy purchased at your store on August 19th, 1939, at about nine-thirty o’clock P. M.
Claim is also made on behalf of Joseph Gaulin, husband and father, for consequential damages in connection therewith.
Claim is hereby made for negligence in the sale thereof and for breach of warranty of fitness of said articles for human consumption and notice is hereby given of said breach of warranty.
A reasonable length of time will be allowed to afford you or your attorney to consult this office before legal action is taken in connection therewith.
Very truly yours,
JOSEPH GAULIN,
THEDA GAULIN,
DAVID GAULIN,
ROBERT GAULIN,
By.......................

Attorney.

It was agreed by the defendant that this notice was delivered at the defendant’s store and Minnie R. Kaletski who testified that she is the treasurer of the defendant corporation testified that she received the notice and that it actually came to her attention.
There was medical testimony offered by Dr. M. J. Zadrozney who testified that in his opinion the plaintiff and her two minor children had suffered poisoning and that in his opinion the cause of the poisoning was the tainted corn cakes.
Simon Kaletski testified that the defendant is a corporation and a member of the ‘NATION WIDE STORES'’ which is a national association of stores; that the Washington Beverage Company Inc. is the owner of the store in question and that his wife, Minnie K. Kaletski, is treasurer *514 of the defendant corporation and also manager of the store.
Upon all the evidence, I find for the plaintiff and assess damages in the amount of $75.00.”
While the above finding appears according to the report to have been made in the case of Theda, we infer that there was a finding for each of the four plaintiffs.
At the bar it was agreed that the issue was whether there was negligence on the part of the defendant.
The essence of all the requests for rulings filed by the defendant and refused by the Trial Judge is in substance that there was insufficient evidence to warrant:
(a) A finding that the corn cakes caused the sickness of the plaintiffs ;
(b) That insufficient notice was given;
(e) That the defendant had knowledge the corn cakes were unwholesome or corrupt;
(d) That the defendant was negligent;
(e) That the defendant’s negligence was the proximate cause of the illnesses;
(f) That the plaintiffs relied upon the skill and judgment of the defendant.
The 6th and 10th requests filed in the case of Theda Uaulin refer to breach of warranty; the 9th is to the effect that “upon all the evidence there should be a finding for the defendant.” As the case was brought upon the issue of negligence alone, the 6th and 10-th were immaterial. The 9th did not conform with the Buies of the District Courts as it contained no specifications. The 11th request was in substance that there was sufficient evidence to warrant a finding the corn cakes at the time of delivery were reasonably fit for the purpose for which they were purchased. This request in reality calls for a finding of fact and the trial judge was not bound to. give it.
*515 "With respect to all the requests other than those numbered six, nine, ten and eleven, the question is as to whether their refusal was prejudicial error or not.
We have concluded, though with some hesitation, that there was no prejudicial error in these refusals or in the findings for the several plaintiffs.
It was the duty of the defendant as a merchant selling articles for human consumption to use due care not only in the storage or keeping of such merchandise but examination thereof prior to sale.
As the defendant was not the manufacturer of the cakes, the responsibility was as indicated limited to the care necessary to protect them from infestation and inspection before sale. An inference of negligence may be drawn from the failure of the defendant to examine the cakes which were not wrapped or covered. O’Brien v. Louis K. Liggett Company, 282 Mass. 438.
Many cases have now definitely settled the obligation of the seller under the circumstances here found.
It may be said without violation of legal principles that there is common knowledge cereal and cereal products become stale in time and are liable to become infested with worms. This requires proper protection and examination before sale of such products.
As a part of these cases, the plaintiffs were bound to show that unwholesome corn cakes sold by the defendant were the probable contributory cause of their illnesses but they were not obliged to exclude every other possible cause. Flynn vs. Growers Outlet Inc., 1940 A. S. 1845 and cases cited.
We find in the report common consumption and common illnesses and a statement by the doctor who attended the plaintiffs that from a history of the plaintiffs, he diagnosed *516 the illnesses as due to food poisoning and from the absence of any testimony of the consumption of other impure foods, it was his opinion that the corn cakes had caused the illnesses. While there was evidence no other person complained of illness from eating the corn cakes sold by the defendant out of the same box, it is equally true the defendant introduced no evidence tending to show that the remaining cakes in the box were free from worms.
The trial judge was warranted in giving some weight to the circumstance that the corn cakes had a peculiar taste. Johnson v. Kanavas, 296 Mass. 373 ; and when under the same conditions several persons who have eaten the same food become similarly ill, a finding may be warranted that the food which all had eaten was unwholesome and was the cause of the illness. Johnson v. Kanavas, 296 Mass. 373.
Viewing the evidence in the light most favorable to the plaintiff, we cannot say that the trial judge was not justified in finding for the plaintiffs. Such a finding is conclusive upon this court if the evidence with the inferences proper to be drawn therefrom justified the trial judge in finding for the plaintiffs.
We do not find it necessary to consider whether corn cakes come within the provisions of General Laws, chapter 94, section 150, as there was ample evidence of negligence without resort to this statute. Bergantine v. General Baming Co., 298 Mass. 106.
No prejudicial error appearing, the report is to he dismissed.