**F. W. WOOLWORTH COMPANY,**
Appellant,

v.

**Tomas GARZA, Individually and as Next
Friend of Maria Albeza Garza,
a Minor, Appellee.**

No. 14367.

Court of Civil Appeals of Texas.

San Antonio.

March 24, 1965.

Rehearing Denied May 12, 1965.

Ewers, Toothaker, Ewers, Byfield & Abbott, McAllen, for appellant.

Philip A. Kazen, John Noyola, Laredo, for appellee.

BARROW, Justice.

This is a products liability case. Judgment was rendered upon a jury verdict whereby appellee, Maria Albeza Garza, a minor, recovered the sum of $1,325.00 and her father, Tomas Garza, recovered medical

expenses in the sum of $143.80, for damages allegedly sustained as a result of the minor plaintiff's eating a hamburger which was unfit for human consumption when served at appellant's lunch counter in Laredo, Texas.[1]

■ It is well-settled law in Texas that parties who sell food or drink intended for human consumption may be held liable, upon an implied warranty, for damages caused to a person who eats or drinks the same, if such food or drink is unfit for human consumption. Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479; Campbell Soup Co. v. Ryan, Tex.Civ.App., 328 S.W.2d 821; no wr.hist.; Sweeney v. Cain, Tex.Civ.App., 243 S.W.2d 874, no wr. hist.

Appellant urges that there is no evidence, or, in the alternative, insufficient evidence, to support the jury's finding that the hamburger eaten by Maria Garza was unfit for human consumption. Under these points, appellant asserts that the only evidence in support of this finding is that Miss Maria Garza became violently ill shortly after eating a hamburger and drinking a soda at appellant's lunch counter.

■ In determining the "no evidence" point we are required to view the record in the light most favorably in support of the jury verdict, to disregard all evidence adverse to the findings of the jury, and consider only the evidence favorable to such findings, indulging every legitimate conclusion which tends to uphold the same. On the other hand, appellant's alternative point requires this Court to consider all the evidence in the record, including that which is contrary to the verdict. Fisher Const. Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126;

Calvert, No Evidence and Insufficient Evidence Points of Error, 38 Texas Law Review 361.

An examination of the record in the light required under the "no evidence" test, shows evidence in addition to the undisputed fact that shortly after eating at appellant's lunch counter Maria sustained a severe anaphylactic reaction which was defined by Dr. Morales as a very acute allergic reaction.

On March 9, 1963, Maria, who was fifteen years old, went from her home in San Ygnacio, Texas, with a friend, Lilia Garcia, and her friend's mother, Mrs. Alicia Garcia, to Laredo, Mexico, where Mrs. Garcia had a tooth pulled. This took nearly three hours, and during that time the two girls waited in the car, with the exception of one look in the dentist's office. After Mrs. Garcia's tooth was pulled, they went to Laredo, Texas, and parked the car about six blocks from appellant's department store. Mrs. Garcia remained in the car while the two girls went to appellant's store to eat lunch. They sat at the lunch counter and each ate a hamburger and drank a soda. On their return walk to the car, Maria started to feel very sick in her stomach and broke out in a rash. Her condition was such that on reaching the car Mrs. Garcia took her immediately to Dr. Morales' office.

Dr. Morales testified that when Maria arrived she fainted, her face and body were swollen and had red spots over them. She had no pulse, no blood pressure and was turning blue. He gave her a shot of adrenalin, as he believed she was dying. She was subsequently transferred to a hospital and stayed there three days. Dr. Morales testified that food poisoning can cause an allergic reaction such as suffered by Maria,

1. The jury returned a verdict substantially as follows:

No. 1. The hamburger which Maria Albeza Garza ate was unfit for human consumption at the time it was served to her.

No. 2. The hamburger eaten by her was the proximate cause of the sickness which she suffered on March 9, 1963.

No. 3. Her sickness was not the result of an allergy.

No. 4. She sustained damages of $1,325.00.

and that a severe reaction like she had would come soon after eating. He testified on re-direct examination as follows:

"Q But from a medical certainty and in your opinion as a doctor it (this allergic reaction) was caused by harmful bacteria in the ham-burger, that was your opinion at the time?

"A In my opinion after gathering all the data that I possibly could, it was food poisoning but that does not mean it was 100% sure.

"Q We are not asking for that, I don't think anybody is entitled to that kind of an opinion. All that we are entitled to is a reasonable cer-tainty from a medical standpoint and your opinion as a doctor, and that is your reasonable opinion as a doctor, that it was food poison-ing.

"A Yes."

There was testimony from Maria and her parents, that although she had eaten ham-burgers before and did so again after this incident, she had never had a reaction from same, and in fact they denied any prior ill-ness. All she had eaten that day, prior to this incident, was a piece of white bread for breakfast about 6:30 A.M.

It is our opinion that this is evidence, more than a scintilla, that the hamburger eaten by Maria was unfit for human con-sumption at the time it was sold to her by appellant. Appellant's first point is over-ruled.

Appellant's second point presents con-siderably more difficulty. Under the un-disputed evidence, Maria had a severe al-lergic reaction. The question presented is whether there is sufficient evidence that it was caused by an unwholesome hamburger. Dr. Morales testified that there are many causes of an allergic reaction other than food poisoning. He admitted that a food product could cause an allergic reaction al-though it was wholesome and did not have any harmful bacteria in it. Further, that Maria did not have some of the usual symp-toms of food poisoning, such as nausea and diarrhea. He testified it usually takes from three to four hours for the bacteria to re-sult in food poisoning.

In the final analysis, his diagnosis was based on Maria's history of having taken no drugs and having eaten only the hamburger since the slice of white bread for breakfast. Although this was a typical novocain re-action, Dr. Morales testified that it was very unlikely Maria could have breathed enough from being in the car with Mrs. Garcia.

There is no evidence that the meat in the hamburger was contaminated or unwhole-some, and, to the contrary, an analysis by the State Health Department of a sample of meat used by appellant that day showed: "No significant organisms isolated." Cf. Decker & Sons v. Capps, supra; Griggs Canning Co. v. Josey, 139 Tex. 623, 164 S.W.2d 835, 142 A.L.R. 1424. There is no evidence of any foreign or deleterious sub-stance in the hamburger. Cf. Sweeney v. Cain, supra. The hamburger had no unusual odor, taste or appearance. Cf. China Doll Restaurant, Inc. v. MacDonald, D.C.Mun. App., 180 A.2d 503; Johnson v. Kanavos, 296 Mass. 373, 6 N.E.2d 434. There were no laboratory tests made of Maria's vomit. The nature of her illness was not such that it could be traced to any particular cause or to a particular type of food. Cf. Nelson v. West Coast Dairy Co., 5 Wash.2d 284, 105 P.2d 76, 130 A.L.R. 606; Hamilton v. Madison Water Co., 116 Me. 157, 100 A. 659. Although appellant sold from five to six hundred hamburgers and many sand-wiches on this date, no other illness was reported to appellant or the Laredo health authorities. In fact, the young lady with Marie also ate a hamburger and had no ill effects whatsoever. Cf. Turner v. Wilson, 227 S.C. 95, 86 S.E.2d 867; Johnson v. Kanavos, supra; Barfield v. F. W. Wool-worth Co., 329 Mass. 641, 110 N.E.2d 103.

■ It is our opinion that the Texas rule of implied warranty does not justify a recovery on the part of a user who shows only that an injury followed the consumption of the food. See Keeton, Products Liability, 41 Tex. Law Review 855. In discussing allergic reactions, Dean Keeton said: "Proof merely of an injurious reaction without evidence as to ingredients and as to allergies some people have to an ingredient may well be regarded as insufficient evidence of a defect. It merely shows a sensitivity of the plaintiff on the particular occasion and perhaps not even this because something else could well have brought about the reaction." It is there said that cases involving an allergy or hypersensitivity on the part of a particular plaintiff with respect to food and drink are not available, however, three cosmetic cases are cited as illustrative of the quoted rule. See Bennett v. Pilot Products Co., 120 Utah 474, 235 P.2d 525, 26 A.L.R.2d 958; Ray v. J. C. Penney Co., 10th Cir.Ct., 274 F.2d 519; Crotty v. Shartenberg's-New Haven, Inc., 147 Conn. 460, 162 A.2d 513.

It is seen that the predicate for Dr. Morales' opinion and the jury's finding that the hamburger was unfit is based entirely upon the fact that Maria sustained an allergic reaction. There is nothing independent of this result which in any way suggests that the hamburger or any of its ingredients were unwholesome. The jury was required to speculate or surmise that the food poisoning caused the allergic reaction and that the hamburger caused the food poisoning. It cannot be said that the finding of the jury is established by circumstantial evidence. Big Three Welding Equipment Co. v. Reeh, Tex.Civ.App., 301 S.W.2d 504, no wr.hist.

It is our opinion, from an examination of the entire record, that the evidence is not factually sufficient to support the jury's finding that the hamburger was unfit for human consumption at the time it was served to Maria. The judgment is reversed and the cause remanded.

On Appellees' Motion for Rehearing.

■ Appellees urge, by motion for rehearing, that we erred in construing appellant's second point as invoking our fact finding jurisdiction. Appellant's second point is as follows: "There is insufficient evidence that the hamburger eaten by Maria Albeza Garza was unfit for human consumption, by reason of which the trial court erred in refusing to grant defendant's motion for instructed verdict and motion for judgment non obstante veredicto. Sickness alone is insufficient evidence that the hamburger was contaminated." Appellant's only other point is identical except that the first four words are: "There is no evidence."

■ It is our opinion, upon reconsideration of appellant's brief, that both of appellant's points are "no evidence" points and we, therefore, have no jurisdiction to remand this case. In McDonald v. New York Central Mutual Fire Ins. Co., 380 S.W. 2d 545, 548 (1964), the Supreme Court considered very similar points[1] and held that they did not seek relief from the jury findings on the ground that they were not supported by sufficient evidence or that they were against the great weight of the evidence, but related only to the type of judgment that the trial court entered. In that case, as in ours, a motion for new trial was filed. See also Schafer v. Stevens, Tex.Civ. App., 352 S.W.2d 471, no wr.hist.; Calvert,

---

1. "'The Court erred in overruling defendant's motions for instructed verdict and judgment n. o. v. and in entering judgment on the jury's verdict because there was insufficient evidence that the damage to plaintiff's beach house was covered by the policy sued upon in that there was insufficient evidence that the damage was caused by the wind and insufficient evidence that it was not caused by water or the concurring action of wind with rising water and wind driven water'."

**94**

"No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. Law Review 361.

Appellant apparently recognized that both of its points were "no evidence" points, in that its brief states: "Appellant has couched the point of error in this case in terms of 'no evidence, or in the alternative, insufficient evidence' because of the fact that in a case of this type there is a line of distinction which is not readily apparent. Although the courts speak in terms of insufficient evidence to warrant submission of the issue to the jury, it appears that such language might be equivalent to a statement that there is no evidence that the food was unwholesome or unfit for human consumption. In either event, however, whether the Court considers it a no evidence case or an insufficient evidence case, the result is the same." Appellant prayed only that the judgment be rendered for it.

Our judgment reversing and remanding this case is therefore set aside and the judgment of the trial court is affirmed.